Filed 4/2/25  Marriage of Skondras CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of KRISTY and PANAGIOTIS SKONDRAS. | C100842 |
| KRISTY SKONDRAS, <br><br> Respondent, <br><br> v. <br><br> PANAGIOTIS SKONDRAS, <br><br> Appellant. | (Super. Ct. No. 17FL05949) |

Respondent Kristy Skondras (wife) filed a petition for dissolution of her marriage to appellant Panagiotis Skondras (husband).  In its final order, the trial court accepted wife's expert's valuation of the community's interest in a business.  The trial court also found a gift husband's father made to the couple to purchase the family residence was community property.  The trial court then ordered wife to make an equalizing payment to husband based on these and other findings.  On appeal, husband contends the trial court

1

erred in valuing the business, in finding his father's gift was community property, and in calculating the equalizing payment. We affirm the trial court's community property findings but conclude the trial court made several clerical errors in calculating the equalizing payment and modify the judgment accordingly.

FACTUAL AND PROCEDURAL BACKGROUND

The trial court found husband and wife were married in May 2003, separated on May 8, 2017, and wife filed a petition for dissolution of marriage on October 24, 2017.

The trial court issued an order after trial dated September 8, 2023, which was finalized in February 2024. The order stated that at trial evidence showed during the marriage wife became a member of a cleaning business formed as a limited liability corporation. Wife owned 42.6 percent interest in the business and another party owned 57.4 percent interest in the business; these were the only two members in the operating agreement. Husband signed a spousal consent to the operating agreement stating he understood wife "will hold a [m]embership [i]nterest in the [c]ompany" and that she "shall have the sole and exclusive power to manage the [m]embership [i]nterest, regardless of whether it was acquired with community property, quasi-community property, or separate property assets." At trial, wife called a forensic accounting expert who averaged the value of four different valuation methods to determine the business was worth $147,000, resulting in a value of $62,622 for the 42.6 percent community property interest. The trial court's order noted husband "did not offer an accountant or other expert on business valuation." The trial court adopted wife's expert's finding as the "more reliable valuation of the business."

Evidence admitted trial also showed the parties purchased husband's father's home during their marriage. To help with the downpayment, husband's father gave the couple $89,000 in equity documented by a letter he wrote stating: "I am gifting equity in the amount of $89,000 to my children [husband] and [wife] in relation to their purchase of my current residence . . . . Repayment of this gift is not required or expected."

2

According to the trial court's order, husband's father testified at trial he signed the letter to avoid his son (husband) from moving away or risking harm to the couple's relationship. But husband's father also testified, at the time of the letter, husband and wife "were both [his] children."

The trial court found the "$89,000 equity was a gift to the community and not solely to [husband]. Thus, there is no separate property contribution" to the residence credited to husband.

The trial court also awarded *Watts*[1] charges and *Epstein*[2] credits. Wife had exclusive use of the community property residence since separation in May 2017. The parties offered different rental values for the residence and the trial court determined a fair rental value of $2,900 per month for 2023 and then lowered that value by $100 every year to $2,300 per month in 2017. The table for the *Watts* charges calculations showed, for example, "$2,300 x 7 = $16,100" for 2017 and "$2,900 x 12 = $26,100" for 2023, for a total of "$198,200." Thus, the court ordered for the period of "June 2017 through September 2023" *Watts* charges "total[ing] $198,200. The community [property] would share equally in the $206,900 rental income from the [property]. [Wife] owes the community $99,100 and [husband] receives a credit of $99,100." (Boldface omitted.)

The trial court also found wife had been paying the monthly mortgage of $1,671, monthly homeowner's insurance of $83, and annual property taxes of $950 for the residence since separation. The court determined this resulted in wife paying the monthly expenses "for 78 months since June 2017 through December 2023, totaling $136,812. In addition, annual property taxes of $83 for six years totals $498." The court ordered "a total community property debt of $133,802. [Wife] should receive an *Epstein* credit in

---

[1]     *In re Marriage of Watts* (1985) 171 Cal.App.3d 366.

[2]     *In re Marriage of Epstein* (1979) 24 Cal.3d 76.

the amount of $66,901 and [husband] owes the community $66,901." (Italics added, boldface omitted.)

The trial court prepared a table in a form called a "CFLR Propertizer 2023-1a" to calculate the equalizing payment. The table lists under "[j]oint" total equity the value of the business as $62,622 and the residence at $471,731. Then, the court listed values for each property under each party. For wife, the table lists $31,311 for the business, $471,731 for the residence, negative $99,100 for *Watts* charges, and $66,901 for the *Epstein* credits, resulting in a total of $470,843 for wife. For husband, the table lists $31,311 for the business, $0 for the residence, $99,100 for *Watts* charges, and negative $66,901 for *Epstein* credits, resulting in a total of $63,510 for husband.

After considering all community property interests, the trial court ordered wife to make an equalizing payment to husband for $203,666. The court also ordered husband to cooperate in removing his name from the residence's title.

Husband appeals.

DISCUSSION

Husband filed only an opening brief, which is difficult to decipher because it has seemingly arbitrary citations to statutes and facts without analysis or context. The background section is also one long section without any clear delineation of its application to the arguments made in the discussion section, sprinkled with argumentative statements without a clear connection to the facts asserted, and citations to the record are often inaccurate. Self-represented litigants carry the same burden of proving their case. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 523 [the self-represented litigant was "not entitled to special treatment"].) And we are "not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106; see *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543 ["Pro[pria] per[sona] litigants are held to the same standards as attorneys"].) Given the disorganization, discerning the precise bounds of husband's arguments is difficult, so

4

we will rely on the headings in the discussion section of husband's brief for the bases on which he is challenging the trial court's order. (See Cal. Rules of Court, rule 8.204(1)(B) [appellate briefs must "[s]tate each point under a separate heading or subheading summarizing the point"].)

I

*Husband Forfeited Any Claims Of Wife's Dishonesty*

Husband's first discussion header asserts wife committed "[p]erjury on [her] [i]ncome and [e]xpense [d]eclarations submitted to the court," and in the process violated her fiduciary duty to the community.

We conclude husband has forfeited any challenge to wife's statements filed with the trial court. We find no indication in the record, and husband cites to none, that he argued to the trial court wife committed perjury or violated a fiduciary duty. Husband even concedes this point stating, "The [t]rial [c]ourt was not made aware of this fact." Husband was required to make these arguments, supported by evidence, to the trial court prior to it making its ruling to preserve the issue for our review. Husband did not and so has forfeited the issue on appeal. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264-265 [the purpose of the forfeiture rule " ' " ' "is to encourage [parties] to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had" ' " ' "].)

II

*The Trial Court Did Not Err In Its Community Property Decisions*

Husband next challenges two of the trial court's findings relating to the determination and valuation of community property.

All property acquired during a marriage in California is community property. (Fam. Code, § 760.) And each spouse has an equal interest in the community property during the marriage. (§§ 751, 2550 [courts shall "divide the community estate of the parties equally"].) Separate property, which the other spouse cannot claim an interest in,

5

includes property "owned by the person before marriage," "property acquired by the person after marriage by gift," and profits from either of these properties. (§ 770, subd. (a); see *In re Marriage of Simmons* (2013) 215 Cal.App.4th 584, 594 ["by its nature separate property is not co-owned by, or divided between, the parties"].)

"The trial court's findings on the characterization and valuation of assets in a dissolution proceeding are factual determinations [that] are reviewed for substantial evidence. [Citation.] 'In this regard, the court has broad discretion to determine the manner in which community property is divided and the responsibility to fix the value of assets and liabilities in order to accomplish an equal division. [Citations.] The trial court's determination of the value of a particular asset is a factual one and as long as that determination is within the range of the evidence presented, we will uphold it on appeal.' " (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572.)

A

*The Trial Court Did Not Err In Determining The Business's Value*

Husband challenges the trial court relying on wife's expert to determine the value of the business. In the heading of husband's second argument, he contends the expert's opinion is "[m]athematically [i]ncorrect and ignores the terms and conditions of the [business's] [o]perating [a]greement." We disagree.

Husband provides no specific argument within the discussion portion of his brief for how the expert's math was incorrect. In the background section, husband makes an assertion that one of the expert's methods does not include the other business member's income "or [d]iscretionary [e]arnings and therefore is not a valuation of the company, but a valuation of only [wife's] income and cannot be considered a valuation of the company." (Boldface omitted.) We conclude this argument was also forfeited because husband fails to provide any citation to the record where he made this argument to the trial court before it made its order.

6

As for the operating agreement as a basis for error, husband contends he has a right under certain provisions of the operating agreement to a "[s]pousal [t]ransfer" because there was a "[t]erminating [e]vent." (Boldface omitted.) We need not scrutinize the portions of the operating agreement husband cites because under the operating agreement husband is not a member of the limited liability corporation. Husband has a community property interest in the business because wife joined the business during the marriage. But under the operating agreement and the spousal consent he signed, husband has no independent interest in the business besides this community property interest. The court was therefore not determining the rights of the members under the operating agreement but the value of the community's interest in the business, which it had broad discretion to do.

We therefore conclude the trial court did not err in determining the value of the business.

B

*The Trial Court Did Not Err In Determining*

*The Equity Gift Was Community Property*

The final section of husband's brief's discussion section is titled "Proposition 58 and the Inherited Property and Tax Swap." For this section of his brief, husband copies in large portions of statutory language involving the characterization and determination of community property, ending this section stating: "Inherited/gifted property is [s]eparate [p]roperty. The relationship of daughter-in-law ceases to exist as [wife] is [d]aughter-in-law to another family." We understand husband's argument here as challenging the trial court finding husband's father's equity gift as community property.

There is substantial evidence the $89,000 was a gift to both husband and wife because the letter stated exactly that. And husband's father's testimony, as summarized in the trial court's order, confirmed the gift was intended for both parties. Wife no longer being husband's father's daughter-in-law is of no moment. Community property is

7

property acquired during marriage, unless it is specifically a gift to one person.  (Fam. Code, § 770, subd. (a)(2).)  Since there is substantial evidence this was a gift to the community, not specifically a gift to husband, it is considered community property.  We therefore conclude the trial court did not err in determining the downpayment gift for the couple's residence was community property.

III

*Equalizing Payment*

Finally, the parties assert several bases for how the trial court's calculated equalizing payment was erroneous.  We agree there are calculation errors.

A

*The Trial Court Erred By Allocating The Business Value Equally*

The parties agree, as stated by wife, "[T]he court erred by awarding the business to [wife] but attributing half the value to [husband] in calculating the equalizing  payment."  We agree.  In determining the allocation of community property in the form table, the trial court split the value of the business between both parties.  It is possible the trial court intended to show the right each party had to the community property, but then it attributed the entire value of the residence to wife and assigned differing values for the *Watts* charges and *Epstein* credits.  From this, we are convinced the trial court intended to show in the form table how much community property value each party would be individually retaining at the time of the order and then have the party with a higher total make the other party whole with an equalizing payment.  Thus, the trial court should have allocated the entire $62,622 for the business to wife.

B

*The Trial Court Erred By Calculating And Allocating* Watts *Charges*

There are several issues with the trial court's calculated *Watts* charges.  *Watts* charges are " 'usage charges' " for " 'the value of [a party's] exclusive use of the family residence . . . between the date of separation and the date . . . the community . . . no

longer [holds] an interest in the residence.' " (*In re Marriage of Jeffries* (1991) 228 Cal.App.3d 548, 552 (*Jeffries*).) *Watts* charges are "paid to the community," with the net effect being "the equal bearing of '*Watts* charges' by both spouses." (*Jeffries*, at p. 553, italics omitted.)

The first issue is the appropriate amount of *Watts* charges. The trial court found these equaled $198,200, but ordered a total of $206,900 and then made individual findings of $99,100 and negative $99,100. Husband contends, in the background section of his brief, the trial court "[m]athematically and cleverly cancels all *Watts* charges owed to [husband]," and wife contends the "$206,900 was correct, not $198,200." (Italics added.) We conclude the court ordered a total of $198,200 for the *Watts* charges.

The difference between the two total numbers listed for *Watts* charges in the trial court's order is how many months one calculates for 2023. The court ordered rent to be $2,900 for 2023 "through September 2023." The *Watts* charges table states for September "$2,900 x 12 = $26,100," but $2,900 multiplied by 12 equals $34,800, whereas $2,900 multiplied by nine equals $26,100. The difference between $34,800 and $26,100 ($8,700) is the same as the difference between $206,900 and $198,200. Thus, we are convinced the trial court intended to order only nine months of rent for 2023, resulting in a total rent of $198,200,[3] and made a clerical error listing 12 months of rent in 2023 and stating total rent of $206,900. Since the court used half of the correct amount ($99,100) in its equalizing payment calculations, we reject the parties'

---

[3]    Adding each year's ordered rent also results in this number:  $16,100 for 2017 (seven multiplied by $2,300), plus $28,800 for 2018 (12 multiplied by $2,400), plus $30,000 for 2019 (12 multiplied by $2,500), plus $31,200 for 2020 (12 multiplied by $2,600), plus $32,400 for 2021 (12 multiplied by $2,700), plus $33,600 for 2022 (12 multiplied by $2,800), plus $26,100 for 2023 (nine multiplied by $2,900), equals $198,200.

contentions the trial court erred in calculating *Watts* charges notwithstanding the inconsistent language in the order.

Though the number was correct, the trial court misapplied the *Watts* charges. The trial court found wife benefited individually for use of the community property residence over about six years in the amount of $198,200. To equalize this, the trial court should have *increased* the amount of community property allocated to wife as separate property and *decreased* the amount allocated to husband. (*Jeffries*, *supra*, 228 Cal.App.3d at pp. 554-555 [approving of the trial court "*adding* the full amount of" rental value "to the overall value of the community estate awarded to" the spouse that had lived in the residence].) This would have made husband better off for considering the *Watts* charges. (*Jeffries*, at p. 555 [the net fiscal impact of *Watts* charges is that the spouse who was not living in the residence should be "better off" for having considered the charges].)

The trial court did the opposite. This can be seen in the effect of the equalizing payment. If we remove the trial court's ordered *Watts* charges, the allocated community property value to wife would *increase* from $470,843 to $569,943 because there would no longer be the negative $99,100. Conversely, husband's allocated value would *decrease* from $63,510 to negative $35,590 if we removed the $99,100. Wife's equalizing payment to husband would therefore increase to $302,766[4] ($569,943 minus the average of $569,943 and negative $35,590), $99,100 more than what the court ordered. This means husband received a lower equalizing payment when the trial court considered *Watts* charges even though he should have been better off. We therefore conclude the trial court reversed the allocation of the *Watts* charges and should have either attributed $99,100 to wife and negative $99,100 to husband, or the full $198,200 to wife.

---

[4]    This number is actually $302,766.50, but the trial court's orders and calculations ignored cents and so shall we.

*The Trial Court Erred By Calculating And Allocating* Epstein *Credits*

Though not addressed by either party, the trial court both miscalculated and misapplied the *Epstein* credits. *Epstein* credits are " 'payment credits' " to reimburse " ' "a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations." ' " (*Jeffries*, *supra*, 228 Cal.App.3d at p. 552.) *Epstein* credits are "to be paid from . . . the community" with the net effect being "the equal sharing of '*Epstein* credits' by both spouses." (*Jeffries*, at p. 553, italics omitted.)

The trial court found wife maintained the residence by paying two monthly charges—$1,671 for the mortgage and $83 for the insurance—and one annual charge—$950 for property taxes. The covered period was "78 months [from] June 2017 through December 2023, totaling $136,812," adding six years for "annual property taxes of $83" for a total of "$133,802." None of this adds up. First, $83 was not the property tax amount, it was $950; $83 was the monthly insurance charge. Also, adding in this property tax *lowered* the total $3,010 from $136,812 to $133,802. Finally, $136,812 divided by the total monthly rate of $1,754 ($1,671 plus $83) results in 78 months. But the final ordered amount, $133,802, is the monthly rate multiplied by 76 months plus six multiplied by $83. We are therefore convinced the trial court intended to order 76 months, which is June 2017 through September 2023, the same period as the *Watts* charges. Further, the trial court intended to include six years of property tax at $950, not the $83 that was for insurance. Thus, we conclude the correct total *Epstein* charges are $139,004, which is 76 months of the monthly charges ($133,304) plus six years of the property taxes ($5,700).

The trial court also reversed the application of the *Epstein* credits. Here, wife paid the costs associated with maintaining the residence. To equalize this, the trial court should have *decreased* the value of community property allocated to wife and *increased* the value allocated to husband. This would have made wife better off for considering the

*Epstein* credits.  (See *Jeffries, supra,* 228 Cal.App.3d at p. 554 [the net fiscal impact of *Epstein* charges is that the party that paid the costs should be "better off" for having considered the credits].)

The trial court did the opposite, and we can again look at the effect on the equalizing payment had the trial court not considered the *Epstein* credits.  Here, this would result in $66,901 less allocated to wife for a total of $403,942, and $66,901 more allocated to husband for a total of $130,411.  The net result is a decrease of $66,901 in wife's equalizing payment to husband to $136,765 ($403,942 minus the average of $403,942 and $130,411).  The *Epstein* credits should benefit wife by decreasing the equalizing payment but by including it in the manner the trial court ordered, the credits increased the equalizing payment she owed to husband.  We therefore conclude the trial court also reversed the application of the *Epstein* credits and should have attributed the correct amount in the correct way:  Either negative $69,502 to wife and $69,502 to husband, or the full $139,004 to husband.

D

*We Order The Judgment Modified*

Wife asks us to "remand for the limited purpose of allowing the trial court to correct the calculation errors."  We decline this invitation because the errors above are clerical, with no additional factual assessment or exercise of discretion required, and so we conclude the better course is to modify the judgment ourselves.  (*Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 506-507 ["an appellate court may correct a judgment containing an obvious clerical error or other defect resulting from inadvertence by modifying the judgment"]; see *People v. Guillen* (1994) 25 Cal.App.4th 756, 764 [concluding for a sentencing error that is "essentially arithmetic in nature . . . it is far more economical to resolve it through the appellate process"].)

Making the above modifications to the trial court's judgment, the result would be the following:  Wife should be allocated $62,622 for the business, $471,731 for the

12

residence, $99,100 in *Watts* charges, and negative $69,502 in *Epstein* credits, resulting in a total of $563,951; husband should be allocated negative $99,100 in *Watts* charges and $69,502 for *Epstein* credits, for a total of negative $29,598. The resulting equalizing payment wife must make to husband is $296,774 ($563,951 minus the average of $563,951 and negative $29,598). We consequently will modify the judgment to reflect this number.

## DISPOSITION

The judgment is modified to reflect an equalizing payment from wife to husband in the amount of $296,774. As modified, the judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


/s/
ROBIE, Acting P. J.


We concur:


/s/
RENNER, J.


/s/
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13